[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married on December 18, 1964 at Madill, Oklahoma. The birth name of the defendant was Smith. The parties have no minor children of this long term marriage, but have had two children, both daughters, during the course of their marriage. They have resided in the State of Connecticut for the statutory period conferring jurisdiction on this court.
The plaintiff currently is employed and will be permanently residing in California after April 1, 1997. The plaintiff was born and educated in Oklahoma. He has a Ph.D. in Economics conferred in 1972. He has been gainfully employed as an Economist since that time. He worked for the Federal government, then moved to Connecticut to take employment at SNET in 1983. He took early retirement on January 5, 1997. He accepted the "early out package" and while not "golden", it was a handshake.
He was reemployed after his job search, on February 23, 1997. He is currently employed by the Law and Economics Group in Emeryville, California.
He testified concerning the marriage. He met his wife while they were in high school, and following her graduation from high school, they dated, and were married two months later, while he was a junior in college. They attended college together. He believed that her major was education, and that she aspired to be a teacher. They had different student housing at the college, and he was employed part-time as a radio announcer.
During his graduate studies, she continued to take courses, but did not graduate. They were supported by stipend and some help from his parents. Their first child, a daughter, was born during that time, and the plaintiff agreed that they had decided that the defendant would remain in the home with the child. There was not any complaint that the defendant was not busy.
The parties moved to Washington, D.C., where their second daughter was born. He described their marriage as always having some difficulties, although not such that the marriage was not CT Page 7977 viable. He did not consider their relationship to be very intimate, but that they did communicate. The focus of the marriage was the children. They seemed to be happy with their two children, and they mutually decided not to bear any more children. They rented, then purchased a home in approximately 1974. That property was sold to purchase the home in Cheshire, purchased when they moved to Connecticut.
That home was sold on August 15, 1996, but had been the home of the family during the entire time they resided in Connecticut. The net proceeds of that sale was approximately Sixty-four Thousand ($64,000.00) Dollars. The parties evenly divided those proceeds at the time of sale, by agreement. This action had been filed by that date. The parties argues differently concerning how the court should consider those funds.
In December of 1995 or January of 1996, the plaintiff had moved into an apartment in Wallingford, until his job situation matured. He has not yet purchased property.
He claimed that there had not been a significant change in their relationship during the past several years. He said there were good times and bad times. He claimed that they perceived that it was better for the children, but that divorce came up several times during the marriage, during arguments. He had earlier decided to seek a divorce, but did not. They discussed their plans to divorce with their children, when they were in their late teens. Both children are married and have children, and are living in their own families.
He was prompted to actually file for divorce after the children were gone, and he felt it was time to make a change. He simply was not happy. He discussed the timing of the action, and the parties maintaining a reasonable relationship with one another. He believes that the marriage has irretrievably broken down, and seeks a decree dissolving the marriage.
The defendant ultimately finished her college education in Connecticut, and was employed part-time in a retail shop. She was employed for less than one year and had a low income, which she kept. The plaintiff testified that he hoped that the defendant would find something to do especially after the children left the home. He testified that he thought it would be beneficial to her to "get out of the house." He claimed that her response was her concern that earlier employment issues would again come up. He CT Page 7978 felt that he had encouraged her to be employed, not because of financial need, but rather for her self-satisfaction or self-actualization. He wanted her to use her "God-given" talents. She had worked as an intern with Family Services in New Haven, and at a hospital treating abused children during her education at Southern Connecticut State University.
He claims that they are both in excellent health. Each has had some medical issues, or surgeries, but nothing that would affect gainful employment and enjoyable activities. The plaintiff is currently fifty-three years old.
He left SNET as Director of Regulatory Affairs and Public Policy, for which he was paid One Hundred, Four Thousand ($104,000.00) Dollars. He was eligible for a "target award", likened to a bonus, but did not receive that in his last year of employment. She currently uses the Southern New England Federal Credit Union joint account for her needs by agreement of the parties. She has been using approximately One Thousand, Eight Hundred ($1,800.00) Dollars per month, which amount is reflected on his financial affidavit.
The plaintiff did the budget for the family during the marriage. The defendant handled the Florida condominium. He claimed that they were "budgeted to the teeth", but that they always cooperated, and he claimed he endeavored to keep her informed of the finances. They purchased the Florida property in 1987. It is a two bedroom condominium in a low rise unit on the fifth floor with a view of Destin harbor. Destin is in the panhandle. They refinanced the Connecticut property to purchase the condo, which is now owned by the parties free of mortgage. They use a rental broker when the family is not using the unit. The rentals pay most of the costs of the maintaining the property.
The plaintiff would like either to maintain ownership of the Florida property as tenants in common, or that the court split the assets fifty-fifty, and that this be one of the assets in that equation. Now that he is in California, he does not contemplate using it with any frequency. While he might like to see it sold, he does believe it is an asset which will appreciate, and that he does not believe that they should subject themselves to capital gains tax which would occur if the property were sold. He believes that the value of the property is between One Hundred, Five Thousand ($105,000.00) Dollars and One Hundred, CT Page 7979 Twenty Thousand ($120,000.00) Dollars.
As a package upon leaving SNET, he received six (6) months of health benefits, and they will be covered until August of 1997. He may cease to be eligible upon his relocation, and that insurance will expire. He has medical coverage through his current employer, which includes many of the same benefits through SNET, although he will not have to pay for dental with this insurance. However, dependents are not covered. He has a point of service plan. He would have to pay the full price for any dependent he elected to have.
SNET also gave six (6) months of the base salary of his last year of employment. He received payment for unused vacation time. There are other benefits, such as education and employment counselors. They are not benefits for which he has need. When he left SNET, he had no other source of income, until March of 1997.
His current employment has no pension plan, so he will have to fund his own. He has participated in their 401K plan, which will not be matched as it was at SNET. He must pay for his parking in the workplace, but other than that, his expenses are similar. He claims that the cost of living is more. He had anticipated that only the cost of housing would be more, but grocery items except produce are more, and even video rentals are more.
He feels he will have to buy housing so as to avoid capital gains. He made an adult decision to take a job in California, and certainly the difference in property values was something he should have considered in accepting that employment. He is, after all, an economist.
He would like to retain the Accura while he claims the defendant shall retain the Honda. He is making no further claim to the furnishings. The parties have several joint bank accounts. He claims one half of those accounts. The Smith Barney account includes a bond which pays income into the joint account on a monthly basis. The parties have a Berlin Sewer Bond with an expiration date of 1998 or 1999.
On cross-examination, the plaintiff agreed that he had accumulated some TIAA-CREF retirement benefits from a college teaching position, which account was used as a down payment on the house in Washington, D.C. The parties moved several times CT Page 7980 based upon new employment for the plaintiff. He conceded that during cross-examination.
He agreed that the defendant had asked him to go to counseling during the troublesome periods of the marriage.
The plaintiff did have a policy of life insurance while at SNET, which policy terminated when his employment there terminated. He agreed that he gave up some life insurance benefits at SNET, but that he has some through his current employment and one reflected on his financial affidavit or a total of One Hundred, Ninety-five Thousand ($195,000.00) Dollars in life insurance. The defendant is the beneficiary thereof.
Evidence in the form of payroll records indicate that the last two years of employment at SNET yielded annual income in the amount of One Hundred, Twelve Thousand ($112,000.00) Dollars. That information was different that that testified to by the plaintiff in his direct examination. He did indicate that the COBRA benefits from SNET may well be available to the defendant should she remain in Connecticut post-judgment.
The plaintiff claimed that he received one salary check and one severance check in January, 1997. He did not recall receiving another check in the month of January. He did recall a check for vacation time in the approximate amount of Seventeen Thousand ($17,000.00) Dollars. Those funds were deposited directly into the joint account at the SNET Credit Union. His severance was approximately Fifty Thousand ($50,000.00) Dollars, and was paid in two installments. The first of those payments was direct deposited, and the second installment, of severance and performance sharing account, is in his possession. The amount is Forty-two Thousand ($42,000.00) Dollars.
He also agreed that he cashed in his management retirement savings plan from SNET upon his termination, and that the minority of those funds were rolled over into his IRA. (Defendant's 3) He also withdrew a management pension account in the approximate amount of Two Hundred, Sixty-six Thousand ($266,000.00) Dollars. These funds were deposited into his Smith Barney IRA.
The plaintiff also was examined with respect to his SNETFCU account, which on March 1, 1997 had a balance of just over Seventy-five Thousand ($75,000.00) Dollars. He conceded that CT Page 7981 within the last two days, he withdrew that Forty-two Thousand ($42,000.00) dollars from that account, which he had planned to take with him to California and deposit in his account there. Those funds are clearly marital assets, and are not noted in any respect on the financial affidavit filed upon commencement of trial with this court.
The plaintiff agreed that the balance of one of the joint accounts had been diminished in the approximate amount of Nine Thousand ($9,000.00) Dollars during the months since his separation from SNET and his move to California. He agreed that he had spent the majority of those funds, although some of the expenditures were for joint obligations, and some funds were used by her. He agreed that the current balances of the accounts at the credit union would have additional interest to date. He has approximately One Thousand ($1,000.00) Dollars in a joint checking account used for the payment of current bills.
The defendant testified in her case. She confirmed the testimony of the plaintiff in major respects. She is fifty, and was eighteen when she was married. She left college in her junior year because of her first pregnancy, but completed her education in Connecticut, as earlier indicated.
She explained her internships, and the employment that she had. Those internships were of about nine weeks in duration. She claimed that her short term employment at a craft and furniture shop in Cheshire was only of five months duration and was for minimum wage. She claimed that she stopped because the plaintiff did not like her to work. She claimed that he left her with the impression that he did not want her to enjoy herself. She has had no other employment outside the home during the course of the marriage.
She agreed that stress was a part of their marriage, but that he refused to seek counseling with her when she asked. He was at times unhappy with his work, the children, and with her. He wanted her to be different but would not tell her why. He expected her to move with him as his career progressed, and she felt it was her duty, and never questioned that. She did not have household help, but was primarily responsible for the upkeep of the home and the activities of the children. She taught Sunday school and was a Brownie and Girl Scout leader for their daughters. CT Page 7982
She would like to move back to Cheshire and be closer to her children, who make their homes in Cheshire and Beacon Falls. The defendant has determined that she needs to spend a certain amount on a condo to avoid capital gains on the sale of the marital home, and has viewed property which will cost her about One Hundred, Thirty Thousand ($130,000.00) Dollars.
The continuation of her medical coverage is critical to her, and she has unreimbursed health-related expenses, especially for medications she currently has prescribed.
She agreed that they often talked about moving out of Connecticut. She testified that they often talked about moving because they moved so often, but that he had expressed a desire to live in the San Francisco area. They have agreed to file a joint tax return for 1996, but that is not completed yet.
The defendant seemed to accepting of the concept that the parties hold the Florida condo as tenants in common and maintain that property for the enjoyment of their family into the future. The defendant testified that she and their daughters love to use the condo when they can, and that it is self-supporting. The plaintiff testified that he would not like to sell it currently because of the capital gains tax implications. The parties seem to be clear on their desires with respect to this piece of property, although their claims for relief filed by counsel do not necessarily reflect that.
On cross-examination, the defendant tearfully stated that she found giving up her employment with the craft and furniture store the most difficult thing for her. She enjoyed the work, the workplace, and the people that she worked with. She was asked to explain what kind of work she would do. She felt she would only be able to have a job, not a career. Despite the fact that she has a college education, the court finds that her age and her lack of experience would be a problem for her. While her earlier training was in early elementary education, she is no longer interested in that endeavor.
The plaintiff argues that the defendant should be encouraged to go out and work, to elevate her self-esteem. The plaintiff argues that her degree work is recent, and that she is healthy and capable. He desires that the property be distributed fifty-five (55%) percent to him and forty-five (45%) percent to her. He argues that he should pay periodic alimony in the amount CT Page 7983 of Five Hundred ($500.00) Dollars per week until retirement, death, remarriage or cohabitation. He argues that she has been able to pay her expenses while the parties were separated, and has no debt nor has she expended any of the assets which she holds in her own name.
The defendant argues that the proposals of the plaintiff do not credit her with the investment she has made in the life of this family. The court agrees. In light of the testimony of the parties, and their apparent lack of acrimony, the claims for relief of the plaintiff are stingy. It was he who desired the divorce, and he can point only to "unhappiness" in his decision to end this long term marriage. It is apparent to the court that these parties may still be married but for his decision to remake his life in the style he desires, regardless of the impact on his wife and daughters. The court does not agree that this marriage should be so easily disregarded. The court does not imply or state that there is a finding that the plaintiff is mean-spirited in his decision-making, only that he must take financial responsibility for it. Both parties impressed the court as caring and responsible parents, who expressed a desire to maintain at least one of their assets for their daughters and grandchildren, as well as themselves.
In light of the statutory criteria, the claims of the parties, and the findings of the court, the following orders shall enter coincidentally with a decree of dissolution:
1) REAL ESTATE: The parties agreed on the record to avoid capital gains taxes on the sale of their condominium in Florida and to continue to share that property as tenants in common to benefit their family. Despite their claims for relief, their articulation on this record shall control, and the court orders that they cooperate to use that property, and to share equally the net rental proceeds or the expenses of the rental of that property. Should they sell the property in the future, they shall share in the net proceeds thereof.
2) ALIMONY: The plaintiff shall pay to the defendant the sum of Eight Hundred ($800.00) Dollars per week as periodic alimony. Such alimony shall terminate upon her death, remarriage or cohabitation pursuant to the statute.
3) MEDICAL INSURANCE: The plaintiff shall pay the cost of medical insurance, commensurate with insurance presently in place CT Page 7984 for her, during the period for which he is obligated to pay alimony. Should the defendant become employed such that a benefit of her employment include medical insurance, she shall accept that benefit, and the obligation of the plaintiff shall be suspended during any such period. The court intends that the plaintiff protect the defendant until she is eligible for medicare, and thereafter for a secondary policy as consistent with the contract in effect at age 65.
4) LIFE INSURANCE: The defendant shall keep in full force and effect, the amount of life insurance in effect during his SNET employment, and maintain full life insurance as provided as a benefit from his current employment, for the benefit of the defendant wife during his obligation to pay alimony to her. He shall provided annual verification of the existence of the policies, and proof that the policies are not emcumbered in any way.
5) PERSONAL PROPERTY: The parties shall retain their personalty, and shall continue to share the personalty currently at the Florida property.
6) OTHER ASSETS: The parties shall share equally all other assets in bank accounts, pension and IRA accounts (which shall be transfered by QUADRO), which sum shall include the Forty-two Thousand ($42,000.00) Dollars which was not disclosed by the plaintiff on his financial affidavit.
Judgment shall enter consistent with this memorandum.
DRANGINIS, J.